

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

IN THE UNITED STATES DISTRICT COURT 06 AUG 14 PM 4:31

DISTRICT OF NEW MEXICO    CLERK-ALBUQUERQUE

GLORIA HANRAHAN,

        Plaintiff

v    CIV 05 0607 JP / WDS

ALLSTATE INSURANCE CO.

        Defendant

PLAINTIFF GLORIA HANRAHAN'S
**FINDINGS AND CONCLUSIONS**

## A. Finding of Facts

    1. Gloria Hanrahan d/b/a La Mexicantia was insured through Allstate Insurance Company from August 28, 2003 to August 28, 2004 Policy Number 0 50 794575.

    2.  The policy insured Plaintiff for $300,000.00, replacement cost.

    3. A fire and burglary occurred at La Mexicanita on June 20, 2004.

    4. A second burglary occurred on July 6, 2004.

    5. At the time of the described loss, Plaintiff was insured with Allstate Insurance Company for her losses under policy # 0 50 794575 in the "replacement cost" limit of $300,000.00.

1

6.  Agents for Allstate named Jason Michaels and Matthew Pierson , CPA investigated the losses and obtained original documentation from the Plaintiff, though Mr. Pierson was never identified as an expert witness.

7.  Allstate's denial of a claim arising out of a fire and burglary   in which the Plaintiff's business La Mexicanita was destroyed, was unreasonable as a matter of fact.

8.   Allstate had on file with its agent, all the information , inventory proof,

proof of the claim, Defendant has in bad faith denied her claim.

9.  Delay in payment to Plaintiff's is due entirely on Defendant behalf.

10.  Plaintiff, Gloria Hanrahan, does not read English.

11.   Early in her examination under oath, at which she had no representation, Plaintiff told the examiner, Allstate's attorney, David Rosales, that she could not read English.

12.  Mr. Rosales knew she did not speak English sufficiently to participate in Allstate's examination under oath in English. For that reason an interpreter was used.

13.   The only documents which Allstate claimed are/were altered and  substantial and material to the case to support their denial to pay the Plaintiff's covered loss  are those six originals that were filed in the official

2

record. Those documents are only six in number.   They were marked by
Allstate Ins. Company's lawyers as exhibits one through six and were filed
April 26, 2006, for the purpose of allowing   Plaintiff to view her original
documents in Court (as Allstate refused to return the original documents to
Plaintiff or to her attorney, though they did arrogantly suggest Plaintiff and
her attorney could view the documents at Allstate's lawyer's office).

14.   The alleged altered documents referred to in the official court file
as exhibits one though six, filed on  April 26, 2006, (by Defendants) do not
demonstrate any meaningful alteration and certainly do not show any
attempt by Plaintiff or any one to misrepresent or deceive the Insurance
Company.   The following are facts demonstrating why these exhibits
cannot be claimed to be altered and conclusively not a material alteration
affecting Plaintiff's claim based upon common knowledge and common
sense.

15.   Exhibit #1: Songs Fashion, receipt # 30192.  Exhibit number 1
was written in black pen ink.  The date 04 is written in blue ink.  The zero of
zero 4 and the 4 of 2004 were in blue ink.  Plaintiff did not make those
changes.  Plaintiff did not know if the different color ink was done by the
vendor, Song's Fashion,  or someone else made the blue ink impression
on exhibit 1.    It is totally unreasonable for Allstate to claim that this

3

alteration was either material and substantial, or had anything to do with the ultimate amount claimed by Plaintiff as a loss.  Common sense says no one would use two different colors of ink to deceive an insurance company. Allstate demanded the original  receipts to look for a bogus basis to deny coverage to a hardworking Mexican mother of 8 children, because they thought they could get away with it.  Allstate had Plaintiff interrogated at a deposition (examination under oath), by Lawyer Rosales, under oath, intimidating Plaintiff, degrading Plaintiff, questioning Plaintiff's truthfulness, all without a lawyer and without telling Plaintiff she could bring a lawyer or a family member to assist her in the interrogation. Plaintiff  felt she was under attack.

16. Exhibit #2, another Song's Fashion invoice # 30193 is written in black ink.  The only change in this receipt is a change in the number of items from "5" to "6".  Again it is absurd for Allstate to claim this receipt was altered and that the alteration has any relevance to Plaintiff's claim. Certainly it does not demonstrate any material or substantial inaccuracy concerning Allstate's/Plaintiff's losses.  If one uses a calculator and divides the total amount charged by six and five, one discovers the correct quantity is six; that six items at 7.75  equals 46.50, the amount demonstrated on the invoice. Plaintiff is surprised that who ever viewed these documents, and

decided that they could be basis of dismissing a bad faith claim was using

unreasonable thought and false consideration.

17. Number 3 is receipt #661746. The vendor nor the address are

found on this receipt. There is notation that someone made at the top

"vendor/date?". Whoever changed this date had to be not thinking and

unintelligent. Certainly the "alteration" bares no connection to Plaintiff's

case. The date, "12-21-04", which appears to be changed, is many month

after the receipt was given to Allstate in June of 2004. Again it is

unbelievable how this alleged alteration has anything to do with the case.

Allstate does not maintain anywhere that I tried to receive compensation for

inventory purchased after the date of the fire.    It should be obvious to

everyone of reasonable intelligence that this another bad faith false attempt

by Allstate to avoid paying a just claim. Receipt # 3 is not an original. It

can not be used by Allstate as it not the original document, but a Xerox

copy.

18. Exhibit number 4, the vendor is Primrose, and the receipt is

number 144. The receipt is in black ink, the date is in blue ink. Again, this

total of about $38.00 dollars, whether it was '03 or '04, should not make

any difference to Plaintiff's claim. Allstate has never claimed that Plaintiff

tried to be paid for inventory that Plaintiff had sold.    As a human

observation, if one intended to alter a receipt to mislead an insurance company, one certainly would not use two different colors of ink.

19. Number 5 is a receipt from Melody Kids. Receipt number 3721.

20. This one is difficult to tell what date the receipt is. The total was scratched out appears to be $319.00 (or perhaps 369) is scratched out and the number $365.39 is written in. This cannot be a substantial and material alteration affecting Plaintiff's claim?

21. Exhibit 5 - If one calculates each item, multiply it by the number of items and the price of each item and then adds them up, the total amounts is $365.00. This is the correct amount stated on the Exhibit 5 after whoever scratched out the erroneous number, whatever number was written first, corrected the error. This change was not made by Plaintiff as none of the alleged changes were.( Mr. Pitt acknowledges that Plaintiff stated to Allstate that none of the alleged alterations were done by Plaintiff). #5 is not material substantial nor even relevant to Plaintiff's claim.

22. The receipts for goods purchased by Plaintiff for her store, nowhere does Allstate claim that the total amount of the cost of the inventory lost in the fire or theft was substantial or materially changed by whatever alterations appear on Exhibit 6 (nor any of the other five "altered" receipts).

6

23.   Exhibit 6 is not an original document. There is no way to tell if there were colored changes. Some of the prices are scratched out and written over. Plaintiff specifically recalled  this receipt was from the Fixture Company (which sells mannequins, and showcases). The total amount if one adds the unit price times the quantity and totals the two entries,$225.00 plus $45.00 the sum is $270.00.  This amount is circled on the invoice. No deception.  Plaintiff had purchased Mannequins at this store full bodied and half body mannequins.   There is nothing dishonest nor a material alteration regarding that exhibit.

None of the alleged alterations can intelligently, reasonably be thought of as being related in any way to dishonesty on Plaintiff's part. The allegation by Allstate that the "altered" receipts, Defendant's  exhibits, demonstrate dishonesty and a basis for denying Plaintiff's proof of loss, her claim, is bad faith and a false basis to deny her claim.

24.   When Allstate agents, Mr. Jason Michael's and Mr. Michael Pearson investigated the case for Allstate, from the beginning.  Allstate sent an investigator who took pictures of the fire damage.  At Plaintiff's deposition, or statement under oath in  Santa Fe, done by Allstate's attorney, Mr. Rosales, Plaintiff saw the photographs that were taken by the Allstate investigator at the fire.   Plaintiff's, Plaintiff's daughter, and Mr.

7

Alejandro Baca were all present when these photographs were taken. Plaintiff has not been given a copy of these photographs.

25. Plaintiff's daughter, Sandra Edith Hanrahan, along with Alejandro Baca, were also with Plaintiff when the photographs were taken. Plaintiff's daughter Nubia and Plaintiff were both interrogated by Allstate/Mr. Rosales. Plaintiff reviewed those photographs at the interrogation of Mr. Rosales's. Those photographs clearly show, and the investigator who took the photos saw, that the person who set the fire used receipts as kindling to start the fire.

26. Allstate requested 2 months of daily receipts and copies of the inventory. Plaintiff and her daughter Sandra made 4 months of copies for the Allstate Agent, Mary Archuleta's office, to give to Allstate.

27. Plaintiff reviewed the estimation of Plaintiff's losses made by the accountant for Allstate, Mr. Pierson, and testified under oath that her losses exceed $139,000.00 dollars, as that figure did not include equipment, fixtures, display counters, etc, and that figure was incorrect as to the inventory loss.

28. Plaintiff reviewed the pages of the partial inventory prepared for Allstate by Serve Pro. The partial inventory given to Plaintiff by SERVPRO was on a CD. The CD has 2 copies of the same inventory, one

prepared 8-5-04, and 10-6-04.  They are both in computer size 312 KB. The latest one is October, 2004.  It states that it is 165 pgs.  That appears to be 165 pages in "excel" software typed pages.

29.   Allstate had the power to compare the 2003 inventory prior to the policy's effective date, a partial inventory April 7, 2004 and at the partial SERVPRO inventory done at the time of the loss.  The Cost of the policy Plaintiff bought from Allstate in 2003 was 3,861.00.  It covered "business content replacement cost" losses until August 28, 2004.  The insurable interest of Plaintiff's "replacement cost" was proven to Allstate to be $300,000.00.  This insurable interest amount was established by a handwritten inventory given to Allstate in 2003 to justify the $300,000.00 insurable interests.

30.   The altered receipts/statements or invoices which Allstate claims are material and substantial and which Allstate claims were altered, and which Allstate claims support a denial of Plaintiff's fire/burglary loss, her contractual claim with Allstate,  is deceptive, untruthful, inaccurate and is not based on any intelligent reasoning.

31. Plaintiff has read the opinions of Mr. Pitt, the "expert" lawyer and of Mr. Michael's of Allstate, who denied the claim,  and the CPA, and Matt Pearson.

32.  Mr. Pitt's letter opinion is junk science and cannot pass the Court's scrutiny as gatekeeper.  He never contacted Plaintiff, Plaintiff's attorney nor any of Plaintiff's family, to understand the other side of Plaintiff claim against Allstate (he wrongfully accepted Allstate's information as the unbiased truth). Mr. Pitt took the information from Allstate as gospel, and based his decision/opinion that Allstate had not committed bad faith on allegations made to him by Allstate concerning Plaintiff's alterations. Nowhere in his opinion does the opinion state that the alleged alterations were substantial and material or even relevant to Allstate's potential covered loss payment to Plaintiff, nor whether the "alterations" had any effect on the Allstate loss of or fact upon which Allstate could deny Plaintiff's claim for the covered loss.     a n y  k i n d  o r nature what so ever.  Plaintiff never had the funds to hire an expert.

33.  The opinion of the lawyer Mr. Pitt claims Allstate should not have to pay anything for Plaintiff's losses. The opinion makes no specifics reference to any particular receipt and did not show how that alteration would constitute a substantial and material  misrepresentation, and dishonesty.

34.  Allstate took and refused to return all of the original documents submitted by Plaintiff.  Despite her demand for the return of her original

10

documents, all of them including Plaintiff's handwritten inventory initially done to satisfy Allstate's "insurable interest" requirement in order for Plaintiff to buy the insurance, Allstate has refused to return any of original documents.

35.    Plaintiff's original handwritten inventory, submitted around the time she purchased the policy, to establish her insurable interest of $300,000.00, the April 7, 2004 inventory, the handwritten daily sales and purchase, and the subsequent purchases, comport with the ServPro's partial inventory (Allstate's agent which did the after fire/burglary inventory) and Plaintiff's inventories (done at the same time after the fire as ServePro's), (with the other original handwritten documents Allstate has not returned) and Plaintiff's losses of display counters, cash register, fax machine, fixtures and equipment together with the lost inventory, exceed the $200,000.00 proof of claim submitted by Plaintiff.

## B. Conclusion of Law

1. Plaintiff had insurance through Allstate Insurance Company at the time of the incident.

2. Plaintiff filed a claim with her insurer, Allstate.

3. Allstate committed bad faith, and breached the contractual agreement into which Plaintiff and Defendant entered.

4.  Allstate has no justifiable basis for the breach of contract (the denial), punitive and exemplary damages should be awarded.

5.  Allstate violated the New Mexico Trade Practices Act NMSA 57-12-1 , *et esq* ., and also 59-16-20 (unfair claims practices).

6.  Plaintiff should be entitled to attorney's fees on the basis of having to file a lawsuit to recover her entitled coverage.

7.  Defendant should be required to pay prejudgment interest on all damages, and lost amounts, compensatory , consequential, incidental, special, hedonic, loss of enjoyment, metal distress and anguish, exemplary damages.

8.  Defendant violated the unfair practices act and the unfair insurance practices act by one or more of the following:

    a.    Selling Gloria $300,000.00 of "Business Contents REPLACEMENT COSTS Limits of Liability 300,000" based upon the "replacement cost" insurable interest accepted by Allstate, and subsequently after her fire/burglary loss, telling her less than half of that amount was actually covered by the policy.

    b.    Forcing her to participate in an interrogation and

examination under oath without counsel nor
representation ;

c.  Using information obtained from her in the EUO
against her to deny her claim, (being untruthful to
Plaintiff about the real purpose of the EUO);

d.  Mistreating her because of her Mexican heritage.

e.  Allstate's attorney, David Rosales told Plaintiff
Gloria Hanrahan "…I am the attorney representing
Allstate Insurance Company in their gathering of
information and documentation that will help then
to understand the insurance claim that you have
made. . . beyond what has already been produced
by yourself or your representatives that would
assist Allstate Insurance Company in evaluating
your insurance claim." EUO Vol. I, p. 4.

f.  In spite of the statement of Mr. Rosales in "e."
above, Mr. Rosales interrogated and cross
examined Gloria Hanrahan for over ten hours,
accused her of setting the fire, asked over ten
hours of questions to set up  a totally disingenuous

13

basis to wrongfully deny paying anything to Plaintiff for her fire/burglary damages and losses.

g.      The interrogation, cross examination, under oath, without even permitting a family member to accompany her, and the ruse of collecting information when it is abundantly clear from Mr. Rosales' questioning, he was a hired investigator for Allstate to obtain information to use against plaintiff and trying to mislead plaintiff to agree to the alteration of documents without ever explaining the honest purpose of the EUO, nor Allstate's position regarding alteration, (i.e., any alteration, regardless of by whom, and regardless of the effect or materiality the alleged alteration has on the claim of Plaintiff, Gloria Hanrahan).

h.      Bad faith failure to settle.   A liability insurance company has a duty to timely investigate and fairly evaluate the claim of its insured, and to accept reasonable settlement offers within policy limits. An insurance company's failure to conduct a

14

competent investigation of the claim and to honestly and fairly balance its own interests and the interests of the insured in rejecting a settlement offer within policy limits is bad faith. If the company gives equal consideration to its own interests and the interests of the insured and based on honest judgment and adequate information does not settle the claim and proceeds to trial, it has acted in good faith.      Hovet v. Allstate, 135 N.M. 397, 89 P. 3d 69 (2004);   Sloan v. State Farm, 135 N.M. 106, 85 P. 3d 230 (2004); FRCP 26.

i.      A13-1705. Evidence. Under the "bad faith" claim, what is customarily done by those engaged in the insurance industry is evidence of whether the insurance company acted in good faith. However, the good faith of the insurance company is determined by the reasonableness of its conduct, whether such conduct is customary in the industry or not. Industry, customs, standards are evidence of good or bad faith, but they are not conclusive.

15

j.          A13-1706.  Violation  of  insurance  practices  act.
There  was  in  force  in  this  state,  at  the  time  of  the
claim  handling  in  this  case,  a  law  prohibiting  certain
practices   by   insurance   companies.   Plaintiff
contends  that  defendant  engaged  in  the  following
prohibited  practice[s]:  59A-16-12,  59A-16-20  by
one  or  more  of  the  following:

A.  misrepresenting  to  insured,  pertinent  facts  or
policy  provisions  relating  to  coverages  at  issue;

B.  failing  to  acknowledge  and  act  reasonably
promptly  upon  communications  with  respect  to
claims  from  the  insured  arising  under  her  policy;

C.  failing  to  adopt  and  implement  reasonable
standards   for   the   prompt   investigation   and
processing  of  insured's  claims  arising  under
policies;

D.  failing  to  affirm  or  deny  coverage  of  claims  of
insured's  within  a  reasonable  time  after  proof  of  loss
requirements  under  the  policy  have  been  completed
and  submitted  by  the  insured;

16

E. not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;

F. failing to settle all catastrophic claims within a ninety-day period after the assignment of a catastrophic claim number when a catastrophic loss has been declared;

G. compelling insured's to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured's when such insured's have made claims for amounts reasonably similar to amounts ultimately recovered;

H. attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

17

I. making known to insured's or claimants a practice of Insurer of denying claims based upon alleged altered documents, without a definition of altered, for the purpose of compelling them to accept settlements or compromises less than is reasonable

J. delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

K. failing to settle an insured's claims promptly where liability has become apparent under one portion of the policy coverage in order to influence settlement under other portions of the policy coverage;

L. failing to promptly provide an insured a reasonable explanation of the basis relied on in the

18

policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

Plaintiff concludes the Defendant  engaged in all of these practices; any one of  which practices, renders it  liable to plaintiff for damages proximately caused by its conduct if it acted knowingly.

M. A13-1707. Violation of unfair practices act. There was in force in this state, at the time of the [dealings] [transaction] in this case, a law prohibiting a person selling  insurance  from  engaging  in  unfair  or deceptive  trade  practices.   An  unfair  or  deceptive trade  practice  is  any  false  or  misleading  oral  or written  statement,  visual  description  or  other representation which tends to or does deceive or mislead the policyholder.  A person who is deceived by an unfair or deceptive trade practice may recover damages  proximately  caused  by  the  deception. Plaintiff contends that defendant engaged in the following prohibited practice[s]:

19

N.  NMSA  57-12-3.  Unfair  or  deceptive  and unconscionable  trade  practices  prohibited.  If defendant engaged in any one of these practices, it is liable to plaintiff for damages proximately caused by its conduct.@

O. 13-1708. Breach of fiduciary duty.  Fiduciary obligations are inherent in insurance relationships such as the one between Plaintiff and Defendant. Defendant breached its fiduciary obligations to Plaintiff  by  unfair,  unreasonable,  delaying, misleading,  attempts  to  wrongfully  deny  loss coverage to Plaintiff when Defendants had taken all of Plaintiff's original documents and Defendants refused to return those documents.

P. Defendant has falsely and in bad faith claimed a  defense  based  upon  A13-1710.  Affirmative defense;

policyholder's dishonesty.  It is a duty of the holder of an insurance policy to deal honestly and fairly with the insurance company. Defendant contends that in

20

submitting a claim for insurance proceeds the plaintiff acted dishonestly and with the intention to deceive the defendant. The Plaintiff may not recover under the "bad faith" claim if, with intent to deceive, [he] [she] dealt with the defendant dishonestly about a material fact.   A material fact is one which a reasonably prudent insurer would regard as important in evaluating the claim.@   Plaintiff claims the Defendant Allstate interposed this defense falsely and not in good faith.

Q.   Defendant in the initial defense of Plaintiff's claim committed fraud upon the Court by submitting affidavits and self serving deceptive expert opinions falsely and deceptively  claiming the Plaintiff  had been dishonest and acted with intent to deceive by supporting her claim with receipts which were altered, when the Defendant knew or should have known the alleged altered receipts were irrelevant and did nothing to substantially or materially affect the claim/proof of loss Plaintiff submitted.

21

R. Plaintiff, in good faith, offered to settle for two thirds of the policy limits, well within the policy, and the Defendant in bad faith intentionally, self-serving, to save its money, misleadingly, deceptively and maliciously investigated and delayed Plaintiff's claim and ultimately in abject bad faith, wrongfully denied the established claim, the covered loss. The Defendant should be required to pay prejudgment interest on all damage and loss amounts, compensatory, consequential, incidental, special, hedonic, loss of enjoyment of life, mental distress and anguish, exemplary and punitive damages because of the increased self serving malicious conduct of the insurance company was in reckless disregard for the interests of the plaintiff, or was based on a dishonest judgment, or was otherwise malicious, willful, or wanton. NM UJI 13-1718. As a result of the failure to pay Plaintiff suffered loss of her business, loss of income, loss of a related new restaurant business for which, just prior to the

22

fire/burglary loss, Plaintiff had purchased a mobile home

Plaintiff should be awarded Judgment against Defendant for all losses

and damages suffered by Plaintiff, including, but not limited to losses covered by the insurance of Defendant, special damages for unfair insurance practices and bad faith breach of contract, including but not

limited to, attorney fees, loss of benefit of bargain/sales profits, general

business profits, transportation costs, loss of interest, costs and expenses, destruction of quality of life, intentional infliction of emotional

distress, litigation costs and expenses, and for all other relief deemed just, equitable and appropriate in the premises.

Respectfully Submitted,

Everett Law
Peter Everett IV
9300 Fourth Street NW
Albuquerque, NM 87114
(505) 899-4343

I hereby certify that I have forwarded
the following to all interested parties
as follows:

David Frizzell
11200 Lomas NE, Suite 210
Albuquerque, NM 87112
(505) 298-9400

this __14th__ Day of August , 2006.

Peter Everett

24